# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| RIDGELAWN CEMETERY ASSOCIATION, INC., | |
| Plaintiff, | |
| v. | Case No. 2:16-CV-370 JVB |
| GRANITE RESOURCES CORPORATION, | |
| Defendant. | |

## OPINION AND ORDER

Plaintiff claims the monument it bought from Defendant cracked too soon.

Defendant moved for dismissal on the grounds that a forum-selection clause requires the parties to litigate this matter (if at all) in the State Courts of Wisconsin. Alternatively, Defendant moved for dismissal of the fraud claim for lack of the requisite level of pleading particularity.

**A.  Background**

Plaintiff Ridgelawn Cemetery Association (an Indiana corporation) ordered a 54,000-pound granite monument from Defendant Granite Resources Corporation ("GRC," a Wisconsin corporation) on August 27, 2010. GRC responded by faxing an order acknowledgment to Ridgelawn, and by sending an invoice to Ridgelawn. (GRC does not specify the manner by which it sent the invoice.)

GRC claims this order acknowledgment and invoice contained terms and conditions on their backs, including a forum-selection clause compelling the parties to bring any litigation regarding this matter exclusively in the State Courts of Wisconsin:

> Any unresolved legal disputes shall be submitted solely to courts of the State of Wisconsin, and each party accepts Wisconsin jurisdiction.

(DE 9-1 at 3.)

Neither the front of the order acknowledgment nor the front of the invoice mentions the existence of terms and conditions on the backs.

Ridgelawn admits it received the order acknowledgement via fax, and also admits it received the invoice. (Ridgelawn does not specify the method of the invoice's transmission either.) But Ridgelawn denies ever receiving the alleged terms and conditions on the backs of the documents.

GRC claims it also mailed the order acknowledgment—with the terms and conditions on the back—to Ridgelawn via regular United States mail. But Ridgelawn denies ever receiving such mail.

GRC delivered the monument in April 2011. Ridgelawn paid in full.

But, according to Ridgelawn, numerous cracks in the granite monument began to appear only three years after installation. Ridgelawn complained to GRC, which sent a representative to investigate the monument. The representative concluded that the cracks were natural fissures, and refused to replace the monument.

So Ridgelawn sued GRC here.

Ridgelawn claims that on December 16, 2015, after demanding satisfaction from GRC, Ridgelawn was provided with a copy of the terms and conditions for the first time. (The affidavit of Robert Williams, Jr., cited in support of this point, is actually a bit narrower, and only claims Ridgelawn first became aware of the terms and conditions on December 16, 2015, when GRC sent a copy to Ridgelawn's attorneys.)

B.  **Forum-selection clause**

(1) *Law*

American law favors forum-selection clauses. The Supreme Court held "such clauses are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972).

A contract requires three basic elements: offer, acceptance, and consideration. *C.G. Schmidt, Inc. v. Permasteelisa N. Am.*, 825 F.3d 801, 805 (7th Cir. 2016) (applying Wisconsin law); *Houston v. Hyatt Regency Indianapolis*, 997 F. Supp. 2d 914, 922 (S.D. Ind. 2014) (applying Indiana law).

Forum-selection clauses are valid contractual terms. *See Muzumdar v. Wellness Int'l Network, Ltd.*, 438 F.3d 759, 761 (7th Cir. 2006); *see also Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585 (1991) (enforcing forum-selection clause on a passenger cruise ticket not subjected to negotiation). But a court will not enforce a forum-selection clause, or any other contractual term, if "enforcement would be unreasonable or unjust or the provision was procured by fraud or overreaching." *Paper Express, Ltd. v. Pfankuch Maschinen GmbH*, 972 F.2d 753, 757 (7th Cir. 1992).

The proper method for seeking enforcement of a forum-selection clause pointing to a state forum is through the doctrine of *forum non conveniens*. *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. Tex.*, 134 S.Ct. 568, 580 (2013). In ruling on such a motion, a court may consider facts outside the pleadings. *See Extra Equipamentos E Exportacao v. Case Corp.*, No. 01-C-

3

8591, 2005 WL 843297 (N.D. Ill. Jan. 20, 2005). Generally, a defendant seeking dismissal under the doctrine of *forum non conveniens* bears a heavy burden. *See Dordieski v. Austrian Airlines*, 2:15-CV-180, 2016 WL 4437958, at *2 (N.D. Ind. Aug. 23, 2016) (Defendants "who invoke *forum non conveniens* bear a heavy burden, particularly when the plaintiff's choice is his home forum.").

But a forum-selection clause shifts the balance. The party seeking to resist the forum-selection clause bears the burden of establishing that transfer to the bargained forum is unwarranted. *Atl. Marine*, 134 S.Ct. at 581–82.

But that presumes the existence of a forum-selection clause in the first place.

The party seeking to enforce the forum-selection clause bears the burden of proving the existence of that clause, if that is in doubt. *See Latino Food Mkt'rs v. Ole Mexican Foods*, 407 F.3d 876, 880–81 (7th Cir. 2005). Then, in a battle-of-the-forms, the party opposing inclusion in the contract of the proposed forum-selection clause bears the burden to show the clause would materially alter the contract. *See Conmark Merch. v. Highland Grp.*, 932 F.2d 1196, 1202–03 (7th Cir. 1991).

Indiana and Wisconsin both adopted the relevant battle-of-the-forms section of the Uniform Commercial Code, governing the issue of whether an additional term included in an acceptance becomes part of the contract:

> (1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.
>
> (2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:

4

> (a) the offer expressly limits acceptance to the terms of the offer;
>
> (b) they materially alter it; or
>
> (c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.
>
> (3) Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this Act.

Ind. Code § 26-1-2-207; W.S. 402.207 (Wisconsin's statute capitalizes the first words of subsections (a), (b), and (c), and refers to its own statutes at the end of the quoted text).

Only if a court concludes plaintiff entered a contract with a forum-selection clause will the court turn to the broader issue of the enforceability of that clause.

**(2)** *Analysis*

(a) *Transmission of the forum-selection clause?*

As noted above, various burdens are at play here. Generally, a defendant seeking dismissal under the doctrine of *forum non conveniens* bears a heavy burden. *See Dordieski*, 2016 WL 4437958, at *2.

But when the parties entered into a contract with a forum-selection clause, the plaintiff resisting that clause bears the burden. *See Robrinzine v. Big Lots Stores*, No. 15-CV-7239, 2016 WL 3459733, at *5 (N.D. Ill. June 24, 2016); *see also Atl. Marine*, 134 S.Ct. at 583 ("When parties have contracted in advance to litigate disputes in a particular forum, courts should not unnecessarily disrupt the parties' settled expectations.")

But to shift the burden to plaintiff, defendant must first bear the burden of showing that the contract actually contained a forum-selection clause. *See F.T.C. v. Cleverlink Trading*, 519 F. Supp. 2d 794, (N.D. Ill. 2007) ("The party seeking to rely upon the terms of a contract, bears the burden of establishing the contract's existence and its terms.") Part of this burden in this case includes showing that GRC actually sent the forum-selection clause to Ridgelawn in connection with the subject contract.

Sometimes the issue of whether the forum-selection clause is part of a contract turns on whether the term is a material alteration which does not win a battle of the forms. In that situation, the resisting plaintiff bears the burden of showing the forum-selection clause is a material alteration and therefore not part of the contract. *See Conmark Merch.*, 932 F.2d at 1202–03.

So, ultimately, GRC, as the party seeking dismissal under *forum non conveniens*, and as the party asserting the existence of a forum-selection clause, bears the initial burden to show that it sent a forum-selection clause to Ridgelawn.

In other words, to have a battle of the forms involving a new and additional term, one party must first actually add a new and additional term.

GRC claims it faxed and mailed the pre-printed, reverse-side terms and conditions—including the forum-selection clause—to Ridgelawn on an order confirmation regarding the purchase of the monument. But Ridgelawn denies ever receiving any terms and conditions from GRC regarding this purchase. Ridgelawn claims it first learned of the alleged terms and conditions on December 16, 2015, when GRC sent a copy to Ridgelawn's attorney.

GRC has not satisfied its burden to show that it sent the forum-selection clause to Ridgelawn. GRC did not submit fax confirmation pages, certified-mail return receipts, correspondence from Ridgelawn indicating it received the terms and conditions, or any similar evidence to prove GRC sent the terms and conditions to Ridgelawn.

Ridgelawn claims it did not receive the terms and conditions at any point in connection with the subject contract, and Ridgelawn says it never even became aware of the terms and conditions until many years later, after the monument cracked, and GRC sent the terms to Ridgelawn's lawyer.

GRC attempts to contradict this by insisting that it did send the terms with the order confirmation to Ridgelawn via fax and regular U.S. mail, and with the invoice (without specifying the means of delivery). But at best for GRC, the affidavits are a wash. GRC still hasn't carried its burden.

GRC might argue that its customary business practice of always mailing a copy of the order confirmation with the terms on its back in addition to faxing the order confirmation bolsters its claim that it mailed the order confirmation with the terms on its back to Ridgelawn regarding this contract. But GRC has not proven this alleged customary business practice by anything other than its own say-so. And when confronted with Ridgelawn's own say-so denial of receiving the terms in connection with this order, the Court still faces a wash at best. So GRC hasn't carried its burden to establish that it actually ever sent the forum-selection clause to Ridgelawn in connection with the purchase of this monument.

This is a sufficient basis to deny the motion to dismiss for *forum non conveniens*.

(b)  *Battle of the forms*

But even if GRC did send the forum-selection clause to Ridgelawn regarding the purchase of the monument, this clause would still have to win the battle of the forms to be enforceable. The parties agree the U.C.C. as adopted controls.

Ridgelawn placed a purchase order, which didn't have a forum-selection clause. The Court will assume for a moment that GRC's responsive order confirmation and invoice carried the forum-selection clause on their backs, and that Ridgelawn actually received this clause.

The parties did not give the Court a copy of the purchase order or of any communications related to this purchase before the order confirmation. The parties do not expressly say what discussion or document constituted the offer or what discussion or document constituted the acceptance. But in their analysis of the battle-of-the-forms, each party treats Ridgelawn's purchase order as the offer and GRC's order acknowledgement as the acceptance. The Court accepts this characterization.

So, under U.C.C. § 2-207(1)[1] the order confirmation operates as an acceptance even though it stated additional terms (including the forum-selection clause) because the order confirmation did not expressly make acceptance conditional on assent to the additional terms.[2]

---

[1] For convenience, the Court cites the Uniform Commercial Code. Indiana and Wisconsin adopted the relevant sections of the U.C.C. without material changes.

[2] The pre-printed, reverse-side terms and conditions close with this line: "These terms and conditions cannot be changed unless made in writing and signed by both parties." (DE 9-1 at 3.) But neither side argues that this sentence expressly made acceptance conditional on assent to the additional terms, and therefore that GRC never accepted Ridgelawn's offer, so there is no contract. In any event, this sentence does not expressly make acceptance conditional on assent to the additional terms.

So, under U.C.C. § 2-207(2) the forum-selection clause is construed as a proposal for addition to the contract. There is no dispute that both parties are merchants. Thus the forum-selection clause becomes part of the contract unless:

> (a) the offer expressly limits acceptance to the terms of the offer;
>
> (b) [the forum-selection clause] materially alter[s] [the contract]; or
>
> (c) notification of objection to [the forum-selection clause] has already been given or is given within a reasonable time after notice of [the forum-selection clause] is received.

U.C.C. § 2-207(2).

The offer (Ridgelawn's purchase order) did not expressly limit acceptance to its terms, so subsection (a) does not apply.

Ridgelawn did not notify GRC of an objection to the forum-selection clause after receiving it. (Ridgelawn claims it never received the forum-selection clause in connection with this contract. But for the moment, the Court assumes Ridgelawn received the forum-selection clause shortly after placing the purchase order.) So subsection (c) does not apply.

The question therefore becomes whether the forum-selection clause materially alters the contract. If it does, then it does not become part of the contract. If it doesn't, then it does.

An additional term materially alters a contract if it would cause unreasonable surprise or unreasonable hardship. *Maxon Corp. v. Tyler Pipe Indus.*, 497 N.E.2d 570, 576 (Ind. Ct. App. 1986); *Resch v. Greenlee Bros. and Co.*, 381 N.W.2d 590, 593 (Wis. Ct. App. 1985); U.C.C. § 2-207 (Official Comment 4).

Surprise and hardship potentially could be distinct factors. *See Trans-Aire Int'l v. N. Adhesive Co.*, 882 F.2d 1254, 1262 (7th Cir. 1989) ("We are not convinced that the additional

indemnification term should not be characterized as a material alteration of the parties' agreement even if we focus solely upon the element of surprise. However, the indemnification clause clearly imposes an unreasonable hardship upon Northern which should not be enforced without evidence of mutual assent to that term.")

District courts within the Seventh Circuit have repeatedly held the addition of forum-selection clauses to be material alterations. *The Sportsman Channel v. The Small Grp.*, No. 08-CV-65, 2008 WL 2909811, at *3 (E.D. Wisc. July 25, 2008) ("It is well-established that the addition of forum selection clauses to agreements constitutes a 'material alteration.'"); *Steel Dynamics, Inc. v. Big River Zinc Corp.*, No. 1:06-CV-110, 2006 WL 1660599, at *5 (N.D. Ind. June 9, 2006) ("The addition of a forum selection clause, however, has been repeatedly considered a 'material alteration' under Section 2-207 of the UCC."); *Dale R. Horning Co. v. Falconer Glass Indus.*, 710 F. Supp. 693 at 698–99 (S.D. Ind. 1989) (finding as a matter of law that a forum-selection clause materially altered an oral contract).

One district court's explanation in 1983 for its conclusion that a forum-selection clause was a material alteration is worth quoting at length:

> This Court likewise concludes that selection of a distant forum with which a party has no contacts, while enforceable if contained in an agreement freely and consciously entered into, can result in surprise and hardship if permitted to become effective by way of confirmation forms that unfortunately are all too often never read. Subtle differences in courts, jurors and law among the states and considerations of litigation expense are factors the Court believes most merchants would consider important. The Court concludes that the forum selection clauses contained in seller's acknowledgment form and invoice materially altered the parties' contract. As a result buyer never consented by way of contract to jurisdiction in this state.

*Prod. Components, Inc. v. Regency Door & Hardware, Inc.*, 568 F. Supp. 651, 654 (S.D. Ind. 1983) (internal citation omitted).

GRC cites *Waukesha Foundry* for the proposition that courts may look to the course of dealings between the parties to determine whether an alternation is an ambush and therefore a material alteration. *Waukesha Foundry v. Indus. Eng'g*, 91 F.3d 1002 (7th Cir. 1996). GRC claims it *would have* sent to Ridgelawn order confirmations and invoices, with the forum-selection clause pre-printed on their backs, regarding eleven prior contracts between the parties, and in GRC's promotional price books.[3]

---

[3] Bearing in mind the potential legitimacy of evidence of an organization's routine practice, the Court notes GRC doesn't definitively claim it sent the terms and conditions to Ridgelawn regarding the eleven prior contracts. GRC doesn't attach proof of transmission or delivery of the terms and conditions regarding the eleven prior contracts. GRC doesn't even attach the copies of the terms and conditions regarding the eleven prior contracts.

Instead, GRC claims Ridgelawn "*would have* received an order acknowledgement containing the standard terms and conditions" and the invoices associated with those prior orders "*would have* also contained GRC's terms and conditions." (DE 17 at 3, emphasis altered.)

GRC claims Ridgelawn "*should have* received the terms and conditions" with GRC's price book, in connection with the eleven prior orders, and in connection with the subject order. (DE 17 at 5, emphasis added.)

The supporting affidavit echoes the indefiniteness.

> Although the price book is dated from 2012, it is substantial in form to the previous price books that Ridgelawn *would have* received and also *would have* contained GRC's terms and conditions.

(DE 18 at 2, emphasis added.)

> As a result, GRC *would have* mailed Rideglawn 11 order acknowledgements prior to the disputed transaction, each within several days of the prior orders. Each of the 11 order acknowledgements *would have* contained GRC's terms and conditions pre-printed on the back of the order acknowledgment. In addition, the invoices associated with the 11 orders *would have* also contained GRC's terms and conditions.

11

First, the Court isn't persuaded that Ridgelawn actually received the forum-selection clause in the course of any of these prior dealings. Ridgelawn claims it first became aware of the forum-selection clause on December 16, 2015. (DE 14 at 2.) GRC offered nothing by way of course of dealings to refute Ridgelawn's claim other than the affidavit of a representative saying GRC *would have* sent the forum-selection clause in connection with the eleven prior deals. (DE 18 at 2.) Again, GRC did not produce any fax confirmations, certified-mail return receipts, or any documentation proving it sent the forum-selection clause in connection with the eleven prior deals. GRC did not even produce copies of the documents with the forum-selection clause it claims it *would have* sent to Ridgelawn in connection with the eleven prior deals.

But even if Ridgelawn did receive the forum-selection clause in connection with the eleven prior deals, *Waukesha Foundry* is distinguishable in several significant respects. In holding that a course of dealings can operate to include an additional term into a contract, *Waukesha Foundry* noted various important facts.

There, the party seeking to enforce the additional term sent over 400 packing slips and invoices to the other party regarding 60 contracts. *Waukesha Foundry*, 91 F.3d at 1004, 1009. Here, on the other hand, GRC claims it would have sent only perhaps 22 order acknowledgments and invoices regarding only eleven prior deals.

There, the parties entered into a series of contracts for the same sort of product. *Id.* at 1003. Here, however, the eleven prior contracts apparently involved orders for particular families ranging from $180 to $2,150, but the subject contract involved a much larger, much more

---

(DE 18 at 2, emphasis added.)

12

expensive product ($41,300), intended for general purposes and not for any particular person or family. (DE 18-2 at 1.)

There, the party resisting the additional term availed itself of this term on prior occasions. *Waukesha Foundry*, 91 F.3d at 1009. But here there is no claim, much less evidence, that Ridgelawn availed itself of the forum-selection clause. Ridgelawn denies even knowing of the term until years later.

There, the Court found "a substantial degree of interpersonal contact between employees of the two companies" such that the resisting party had ample opportunity to clarify any facet of its relationship with the other party. *Id.* at 1009. But here the parties apparently only dealt with each other eleven times before the subject contract.

Finally, although not dispositive, the Court notes that *Waukesha Foundry* addressed the materiality of limitation-of-remedies terms. It did not specifically address the materiality of forum-selection clauses.

In short, given the distinctions between this case and *Waukesha Foundry*, the Court concludes that Ridgelawn would be unreasonably surprised to find out that the additional forum-selection clause compelled it to bring any litigation against GRC in Wisconsin.

Moreover, surprise is not the only relevant consideration. A proposed additional term also materially alters a contract if the term would cause unreasonable hardship. *See* U.C.C. § 2-207 (Official Comment 4); *S. Ill. Riverboat Casino Cruises v. Triangle Insulation and Sheet Metal Co.*, 302 F.3d 667, 673 (7th Cir. 2002); *Trans-Aire Int'l*, 882 F.2d at 1262.

The Court concludes the forum-selection clause would cause Ridgelawn to suffer unreasonable hardship in these circumstances.

Therefore, under the U.C.C.'s battle-of-the-forms analysis, as adopted by Indiana and Wisconsin, the forum-selection clause was merely a proposal. Since it would unreasonably surprise Ridgelawn and cause it unreasonable hardship, the forum-selection clause was a material alteration, and did not become part of the contract.[4] Ridgelawn never expressly accepted the forum-selection clause.

The documents and the conduct of the parties demonstrate the parties entered into a contract with each other. But the proposed additional forum-selection clause never became part of that contract. *See Union Carbide Corp. v. Oscar Mayer Foods Corp.*, 947 F.2d 1333, 1336 (7th Cir. 1991) ("If a term added by the offeree in his acceptance works a material alteration of the offer, the acceptance is still effective, but the term is not: that is, the contract is enforceable minus the term the offeree tried to add.")

Accordingly, the Court denies the motion to dismiss for *forum non conveniens*.[5]

**C.      Fraud**

GRC also moves under Rule 12(b)(6) for dismissal of the fraud count for failure to comply with Rule 9(b)'s heightened pleading requirements.

---

[4] The Court does not, and need not, conclude that a forum-selection clause is *per se* a material alteration.

[5] The Court is not persuaded by GRC's arguments regarding its price books. Among other problems, GRC has not pointed the Court to any case holding that a price book which is not expressly made part of a contract can operate to incorporate terms into contracts.

**(1)** *Law*

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim is to test the sufficiency of the pleadings, not to decide the merits of the case. *See Gibson v. Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). Rule 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." However, "recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007)).[6]

As the Supreme Court stated, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* Rather, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570). A complaint is facially plausible if a court can reasonably infer from factual content in the pleading that the defendant is liable for the alleged wrongdoing. *Id.* (citing *Twombly*, 550 U.S. at 556).

The Seventh Circuit synthesized the standard into three requirements. *See Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). "First, a plaintiff must provide notice to defendants of her claims. Second, courts must accept a plaintiff's factual allegations as true, but some factual allegations will be so sketchy or implausible that they fail to provide sufficient notice to defendants of the plaintiff's claim. Third, in considering the plaintiff's factual allegations, courts

---

[6] In *Twombly*, the Supreme Court "retooled federal pleading standards, retiring the oft-quoted [*Conley v. Gibson*, 355 U.S. 42, 47 (1957)] formulation that a pleading 'should not be dismissed for failure to state a claim unless it appears beyond doubt that the [pleader] can prove no set of facts in support of his claim which would entitle him to relief.'" *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id.*

Rule 9(b) imposes a heightened pleading standard for allegations of fraud:

> In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

Fed. R. Civ. P. 9(b).

Rule 9(b) requires a plaintiff alleging fraud to plead the "who, what, when, where, and how: the first paragraph of any newspaper story," of the "circumstances constituting fraud." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). In other words, a plaintiff alleging fraud must "identify the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated." *Wine & Canvas Dev., LLC v. Weisser*, 886 F. Supp. 2d 903, 944 (S.D. Ind. 2012) (internal quotations omitted). The exact level of particularity required will differ on the basis of the facts of the case. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011).

In the Seventh Circuit, a plaintiff who provides a "general outline of the fraud scheme" sufficient to "reasonably notify the defendants of their purported role" in the fraud satisfies Rule 9(b). *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1020 (7th Cir. 1992). Fair notice is "perhaps the most basic consideration" underlying Rule 9(b). *Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 777–78 (7th Cir. 1994) (internal quotation marks omitted).

When the details of the fraud are within the defendant's exclusive knowledge or are otherwise available to defendant, the specificity requirements are less stringent. *Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1328 (7th Cir. 1994). In those circumstances, the complaint must

plead the grounds for plaintiff's suspicions of fraud. *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 684 (7th Cir. 1992).

**(2)**     *Discussion*

Ridgelawn's complaint satisfies Rule 9(b)'s heightened pleading standards for fraud. It provides sufficient particularity to survive a motion to dismiss.

GRC seems to fault Ridgelawn for incorporating previous paragraphs into its fraud count, but there's nothing wrong with incorporation.

The complaint answers the essential, particular questions.

Who made the fraudulent misrepresentations? GRC's representatives. GRC asks in its reply brief: "Who at GRC allegedly made misrepresentations and statements to who [sic] at Ridgelawn?" (DE 17 at 7.) But there's no requirement that the complaint identify the natural person who spoke the fraud. *See Gelco Corp. v. Duval Motor Co.*, No. 02-C-5613, 2002 WL 31875537, at *7 (N.D. Ill. Dec. 26, 2002) (rejecting defendant's unsupported assertion that plaintiff must identify the natural person who made the fraudulent statement). GRC did not direct the Court to a case standing for the proposition that the plaintiff must identify the natural person in every allegation of fraud.

What was the fraudulent misrepresentation? That the monument was of sufficient quality to last (but it's not). And that the cracks were natural fissures in the granite (but they're not). There's no requirement that the complaint contain direct quotes, nor does GRC claim such a requirement.

When? The complaint alleges Ridgelawn and GRC communicated about the monument in 2010, and Ridgelawn ordered the monument on August 27, 2010. The complaint alleges GRC made material misrepresentations to Ridgelawn about the quality of the monument and its lasting durability, and Ridgelawn relied to its detriment on these representations when it purchased the monument. The complaint also alleges GRC delivered and installed the monument after April 11, 2011, and cracks appeared three years later. The complaint alleges that upon discovery of the cracks, Ridgelawn demanded GRC replace the monument. GRC sent a representative to investigate the monument, but he concluded the cracks were natural fissures in the granite. The time frame thus presented is not a model of clarity, but it is close enough, especially given GRC's ability to corroborate or refute the timeline. There's no requirement that the complaint state exact dates and times, nor does GRC claim such a requirement.

Where? The complaint alleges enough on this issue, and GRC knows where its representatives were when they said what they said leading up to the contract, at the time of contracting, and following the inspection.

How? The complaint alleges GRC made the statements in the course of the contacts leading up to the contract, and following inspection of the cracks.

The parties, of course, will need discovery to determine further details regarding these allegations. But the allegations are sufficient to satisfy the heightened pleading standards. The allegations give GRC fair and adequate notice of the fraud claim against it. This order should not be construed as limiting the complaint, but merely as showing examples of how the complaint satisfies the pleading standard.

**D.     Conclusion**

The Court denies GRC's motion to dismiss or transfer (DE 7).

**SO ORDERED** on August 31, 2017.

s/ Joseph S. Van Bokkelen<br>
JOSEPH S. VAN BOKKELEN<br>
UNITED STATES DISTRICT COURT